UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE CALDERON AND EMILY RICE,

                Plaintiffs,

   -against-

919 PROSPECT AVENUE LLC, AEGIS REALTY
MANAGEMENT CORP, AND SETH MILLER,

                Defendants.

**Civil Action No: 22-cv-96**

**COMPLAINT and DEMAND
FOR A TRIAL BY JURY**

---

## NATURE OF THE ACTION

1.     Plaintiffs bring this action to recover unpaid wages and overtime for work performed by Mr. Calderon as a building superintendent for Defendants from July 2020 through January 25, 2021, to remedy unlawful national origin discrimination by Defendants, and to remedy harassment perpetrated by Defendants to illegally evict Plaintiffs from their residence.

2.     Mr. Calderon seeks unpaid overtime wages, liquidated damages, interest, and attorney's fees for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq., New York Labor Law ("NYLL"), §§ 650 et. seq., and the New York Minimum Wage Order for the Building Services Industry, 12 N.Y.C.R.R. §142-2.2.

3.     Mr. Calderon additionally seeks backpay, emotional distress damages, punitive damages, interest, and attorney's fees for Defendants' violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. §§ 8-101 et. seq.

4.     Plaintiffs together seek injunctive relief and damages for harassment by Defendants in violation of the New York City Housing Maintenance Code N.Y.C. Admin. §§ 27-2001 et. seq.

1

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29

U.S.C. § 216(b). The Court has jurisdiction over Plaintiffs' state law claims pursuant to 28

U.S.C. § 1367.

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391, because Defendants maintain a principal place of business in this judicial district, Plaintiffs

reside in this judicial district, and the events giving rise to Plaintiffs' claims occurred in this

judicial district.

## PARTIES

5.     Plaintiff Jose Calderon currently resides at 830 E. 163rd Street, Bronx, NY 10459.

6.     Plaintiff Emily Rice currently resides at 830 E. 163rd Street, Bronx, NY 10459.

7.     Plaintiffs Rice and Calderon are domestic partners and resided together during all

events described in this Complaint.

8.     Defendant 919 Prospect Ave LLC ("919 Prospect") is the owner of 830 E. 163rd

Street, Bronx, NY 10459. 919 Prospect is a limited liability company registered with the New

York State Department of State and maintains a principal place of business at 125 W. 72nd Street,

Room 3F, New York, NY 10023. 919 Prospect employed Mr. Calderon as a building

superintendent. 919 Prospect employed Mr. Calderon within the meaning of the FLSA, NYLL,

and NYCHRL.

9.     Defendant Aegis Realty Management Corp. ("Aegis Realty") is the managing

agent of 860 E. 163rd Street, Bronx, NY 10459. Aegis Realty is a domestic business corporation

registered with the New York State Department of State. Aegis Realty has a principal place of

business at 125 W. 72nd Street, Room 3F, New York, NY 10023.  Aegis Realty employed Mr. Calderon within the meaning of the FLSA, NYLL, and NYCHRL.

10.    Upon information and belief, Defendant Seth Miller is a director and majority shareholder of Aegis Realty and a managing member of 919 Prospect. Mr. Miller maintains a principal place of business at 2 W. 45th Street, Room 1704. New York, NY 10036. Mr. Miller employed Mr. Calderon within the meaning of the FLSA, NYLL, and NYCHRL.

11.    Defendants jointly employed Mr. Calderon within the meaning of the FLSA, NYLL, and NYCHRL.

12.    In the alternative Defendants constitute a single employer of Mr. Calderon within the meaning of the FLSA, NYLL, and NYCHRL.

## STATUTORY FRAMEWORK

### Fair Labor Standards Act

13.    The FLSA requires covered employers to pay their employers one and a half times their regular rate for their hours worked beyond 40 hours per week. 29 U.S.C. § 207(a).

14.     An employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d). Covered employers under the FLSA are those who engage in related activities in commerce for a common business purpose and who have a gross volume of business which is not less than $500,000 per year. 29 U.S.C. § 203(s)(1)(A)(ii).

15.    An employee under the FLSA is any individual employed by a covered employer. 29 U.S.C. § 203(e)(1).

16.    An employee's regular rate is the hourly rate an employee is paid for all non-overtime hours worked in a workweek. 29 C.F.R. § 778.108.

17.     Covered employers must make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours, and other conditions and practices of employment. 29 U.S.C. §§ 211(c), 215(a).

18.     Where an employer's violations of the FLSA are willful and intentional and where the employer has not made a good faith effort to comply with the FLSA, the employee will be entitled to recover his unpaid overtime wages and an equal amount in liquidated damages, prejudgment interest as well as reasonable attorney's fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

### New York Labor Law

19.     Any individual, limited liability company or corporation or organized group acting as an employer in New York is a covered employer under NYLL. New York Labor Law § 651(6).

20.     NYLL requirements apply to all employees, defined as "any individual employed or permitted to work by an employer in any occupation." NYLL § 651(5)

21.     NYLL § 663 provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she entitled under the provisions of this article, he or she shall recover in a civil action the among of any such underpayments, together with cost all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

22.     Under the New York State Building Service Industry Wage Order, an employer must generally pay an employee an overtime wage of one and one-half times the employee's regular rate of pay. 12 N.Y.C.R.R. §142-2.2.

23.     NYLL mandates that an employee is entitled to recover the full sum of wages owed, not just the statutory minimum wage for hours worked. New York Labor Law § 198(3).

24.     NYLL §198(1-a) provides that an underpaid employee is entitled to recover in a civil action the total amount of the underpayment, costs, attorney's fees, and prejudgment interest, plus, if the underpayment was willful, additional liquidated damages equal to one hundred percent of the total underpayments due.

25.     NYLL § 195(1) provides that an employer shall provide each employee at the time of hiring:  "a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different; [and]  the telephone number of the employer." An employer must retain a signed acknowledgment of the hiring notice's receipt.

26.     NYLL § 195(3) provides that every employer shall furnish each employee with a statement with every payment of wages which must include, for all employees who are not exempt from overtime, the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

27.    NYLL §195(4) provides that every employer shall maintain and preserve contemporaneous and accurate records of hours worked each week, and for all employees who are not exempt from overtime compensation, the payroll records shall include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of hours worked, and the number of overtime hours worked.

28.    NYLL § 198 (1-b) provides that for violations of NYLL § 195(1), an underpaid employee is entitled to recover damages of $50 for each workday that the violations occurred or continued to occur, up to a maximum total of $5,000, plus costs, reasonable attorney's fees, and any other relief that the Court in its discretion deems appropriate.

29.    NYLL § 198(1-d) provides that for violations of NYLL § 195(3), an underpaid employee is entitled to recover damages of $250 for each workday that the violations occurred or continued to occur, up to a maximum total of $5,000, plus costs, reasonable attorney's fees, and any other relief that the Court in its discretion deems appropriate.

**New York City Human Rights Law**

30.    The NYCHRL covers employers in New York City with four or more employees. N.Y.C. Admin. § 8-102.

31.    The NYCHRL forbids an employer from discriminating against an employee in compensation, or in terms, conditions, or privileges of employment based on the employee's age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed services, or immigration or citizenship status. N.Y.C. Admin § 8-107(1).

32.    The NYCHRL provides for compensatory damages, costs and attorney's fees, and punitive damages where an employer acts with malice. N.Y.C. Admin § 8-502.

**New York City Housing Maintenance Code**

33.     The Housing Maintenance Cold ("HMC") provides rules for the maintenance, management, and habitability of residential dwellings in New York City.

34.     The HMC classifies residential housing into various forms of "dwelling," defined as "any building or structure or portion thereof is occupied in whole or in part as the home, residence, or sleeping place of one or more human beings." N.Y.C. Admin. § 27-2004(a)(3). A dwelling leased as the residence of three or more families living independently of each other constitutes a multiple dwelling under the HMC. *Id.* (a)(7).

35.     The HMC defines ownership broadly as the owner of the freehold estate of a property or any lesser estate therein, a mortgagee in possession, or any other person, firm, or corporation directly or indirectly in control of a dwelling. *Id.* (a)(45).

36.     The owner of a dwelling may not harass any tenants or persons lawfully entitled to occupancy of a dwelling. N.Y.C. Admin § 2005(d). The HMC enumerates a variety of acts or omissions intended to drive an individual lawfully entitled to occupancy from his dwelling as harassment, including failure to repair hazardous conditions and conduct of such significance as to substantially interfere with the comfort, repose, peace or quiet of a resident. N.Y.C. Admin § 2004(a)(48)(a)-(g).

37.     Upon a finding of harassment, the Court may order an owner to halt any future harassment and remedy any ongoing harassment. N.Y.C. Admin. § 27-2115(m)(2). The Court may further award Plaintiff compensatory and punitive damages arising from an owner's harassment. N.Y.C. Admin. § 27-2115(o).

38.     Upon a finding of harassment, the Court shall additionally impose a civil penalty in an amount not less than $2,000 and not more than $10,000 for each unit in which a tenant or

person lawfully entitled to occupancy of such unit has been the subject of harassment, and such other relief as the Court deems appropriate. N.Y.C. Admin. § 27-2115(m)(2).

## FACTS

### Defendants' Business

39.    Upon information and belief, Defendants individually and jointly collect over $500,000 in revenue per year.

40.    The Department of Housing and Urban Development ("HUD") determines the Fair Market Rent ("FMR") in jurisdictions across the United States. The FMR is defined as the 40th percentile rent paid in a given area. 24 C.F.R. § 888.113.

41.    In 2020, the year of Plaintiff's hiring, the FMR in the zip code 10459, the location of Plaintiff's employment, was: $1,665 for a studio, $1,714 for a one-bedroom, $1,951 for a two bedroom, and $2,472 for a three bedroom, and $2,643 for a four-bedroom.

42.    860 E. 163rd Street is a six story, mixed use building with 37 residential units and additional commercial units on the ground floor. Though the apartments at the premises vary in size, if Defendants collect at least the 2020 FMR for a studio for each residential apartment in the building, Defendants collect at least $61,605 per month, which amounts to at least $739,260 in estimated rent revenue each year. Upon information and belief, Defendants own and manage other buildings which generate additional revenue.

### Mr. Calderon's Duties as Superintendent

43.    Mr. Calderon worked for Defendants as a superintendent from June 18, 2020, until January 25, 2021, when Defendants terminated his employment.

44.    Mr. Calderon found the building in serious disrepair as he began his employment. Indeed, in the five years before Plaintiff's employment, the New York City Department of Housing Preservation and Urban Development reported 603 violations of the New York City Housing Maintenance Code, including heat and hot water outages, infestations of mice, bed bugs and cockroaches, leaks and flooding, sewage leaking, black mold, exposed electrical wiring, and non-functional apartment doors. As a result of this history of neglect, in 2017 then-Public Advocate Letitia James dubbed 860 E. 163rd St. "the worst building in the Bronx," and Defendant Miller one of New York City's "worst landlords." *See* Eddie Small, *Tenants at 'Worst Building' in The Bronx File Suit Against Landlord*, DNA INFO, (December 12, 2016), https://www.dnainfo.com/new-york/20161215/morrisania/919-prospect-avenue-seth-miller-lawsuit/. Public Advocate Jumaane Williams similarly named Defendant Miller as the fifteenth worst landlord in New York City in 2021, identifying 830 E. 163rd Street as a "watchlist" building because of the number of HPD violations. *See* New York City Public Advocate, *2021 Landlord Watchlist*, https://landlordwatchlist.com/landlords (accessed Dec. 21, 2021).

45.    As building superintendent, Mr. Calderon was responsible for the maintenance of 830 E. 163rd Street. His duties included performing a wide variety of maintenance work in the building's common areas and for individual tenants. Mr. Calderon completed plumbing assignments--including fixing leaks from pipes or improper roof weatherization, repairing or replacing sinks, faucets, and toilets--and clearing blocked drains, including the building's sewage main line. He repaired or replaced broken radiators, performed electrical work by installing electrical sockets, light fixtures and wiring; and provided pest control services, trapping rodents for tenants and spraying pesticide to exterminate roaches and other vermin. Mr. Calderon further

engaged in a range of renovation work on behalf of Defendants, including brickwork, wall framing, sheetrock installation, tiling, pipe fitting, and painting.

46.     In addition to the above responsibilities, Mr. Calderon was responsible for daily cleaning of the building and ensuring proper removal of garbage and recycling. Defendants retained a porter who was supposed to assist Plaintiff in these assignments but regularly failed to do so. Defendants held Mr. Calderon responsible for completing cleaning and sanitation tasks regardless of whether the porter showed up to assist him. In or around October 2020, Defendants fired the porter and Mr. Calderon completed the assignments without the previously intermittent assistance from a porter.

**Mr. Calderon's Pay and Work Hours**

47.     Upon hiring him, Defendants provided Mr. Calderon with a memorandum regarding his terms of employment. This memorandum stated that Mr. Calderon would be paid a flat salary of $800 per week, and that Mr. Calderon would work Monday to Friday from 8 AM to 5 PM with a one-hour lunch break. The memorandum further stated that Mr. Calderon would be on call in case of emergencies "during waking hours 7 days a week."

48.     Defendants additionally provided Plaintiffs with rent-free lodging in 830 E. 163rd Street. Before Mr. Calderon began his employment, Defendant Miller walked him through the premises at 830 E 163rd Street. Defendant Miller showed Mr. Calderon an unfinished basement apartment, which he told Mr. Calderon Defendants would renovate for his use as a living space. However, when Mr. Calderon began his employment and moved in, the space was still unfinished, lacking gas and plumbing fixtures. Plaintiffs lived in the basement until September 2020, when a sewage line back-up flooded the basement with raw sewage. With Defendants' approval, Plaintiffs moved into apartment 1B, where they continue to reside. Apartment 1B also

lacked gas and plumbing connections, which Plaintiff himself installed. Defendants did not ask Plaintiffs to sign a lease for either unit.

49.    Defendants did not provide Mr. Calderon written notice regarding his overtime eligibility. However, Defendant Miller stated to him that he would be paid overtime for his hours worked over forty each week.

50.    Though Defendant promised Plaintiff $800 each week, Defendant's gross pay to Mr. Calderon was always in the amount of $760. Defendant provided no justification for this weekly deduction from Plaintiff's salary.

51.    Mr. Calderon's duties required him to work beyond 8 AM to 5 PM for Defendants. For example, Plaintiff took out the building trash on Tuesday, Thursday and Sunday evenings. This work had to be done after 5 PM, or the building would be ticketed by the New York City Department of Sanitation.

52.    Defendants did not allow Mr. Calderon to take breaks during his workday. On occasions when Mr. Calderon did attempt to take a break, Defendant Miller would often yell at Mr. Calderon and accuse him of failing to perform his duties.

53.    Mr. Calderon routinely worked more than forty hours in a week for Defendants. In the first three months of Plaintiff's employment, June and August 2020, Plaintiff worked 50 hours a week for Defendants, on average.

54.    In or around September 2020, Mr. Calderon agreed to take on additional assignments from Defendants. At Defendants' request, Mr. Calderon performed renovation work on Defendants' office, located at 125 W. 72nd Street, New York, NY 10023. Plaintiff built out interior walls for Defendants' office, laid electrical wiring, and restructured the offices' plumbing layout. Mr. Calderon performed this work in addition to his regular duties, working on

average 72 hours each week during the month of September. At the end of the month, Mr.

Calderon informed Defendant Miller that he could not attend to all the problems in 830 E. 163rd

Street while also working on Defendants' office. Defendant Miller then allowed Mr. Calderon to

return to working solely at 830 E. 163rd Street.

55.    In or around October 2020, Defendants fired the building porter. Without a

porter to assist him, Mr. Calderon had to work longer hours to complete the necessary tasks

around the building. In the months of October 2020 through January 2021, Mr. Calderon worked

around 68 hours each week for Defendants.

56.    Mr. Calderon regularly communicated his actual working hours to Defendants.

When Mr. Calderon worked past his regular scheduled hours, he would alert Defendants by

sending Defendant Miller a text or WhatsApp message. These messages noted the time he

finished work and the assignments he was working on at the time. Defendant Miller responded to

Mr. Calderon's messages with hostility. On at least one occasion, he yelled at Mr. Calderon for

allegedly taking too long to complete his assignments. However, Defendants did not reduce the

volume of Mr. Calderon's assignments, and in fact continued to send him assignments that had

to be completed during his scheduled off hours.

57.    Mr. Calderon repeatedly requested Defendants compensate him for his overtime

hours. In or around September 2020, Defendant Miller sent Mr. Calderon a letter regarding Mr.

Calderon's overtime eligibility, stating that his weekly salary covered forty hours of work only,

and that Mr. Calderon was entitled to overtime pay for additional work. Defendant Miller orally

repeated this assurance to Mr. Calderon on several other occasions, but Defendants at no point

paid him for his overtime.

**Wages Owed to Mr. Calderon**

58.     Mr. Calderon's regular rate throughout his employment was $800 for forty hours of work, equal to $20 per hour. Mr. Calderon's overtime rate was $30 per hour.

59.     Mr. Calderon kept personal records of his overtime hours worked. Based on these records and his recollection, Mr. Calderon worked unpaid 683 overtime hours over the thirty weeks of his employment, averaging 23 overtime hours each week.

60.     Defendants owe Mr. Calderon $18,660 in unpaid overtime.

61.     Defendants promised Mr. Calderon a salary of $800 per week, but never paid him more than the gross amount of $760 per week. Defendants accordingly owe Mr. Calderon $1080 in unpaid straight time wages for the thirty weeks of his employment.

**Defendant Miller Harassed Mr. Calderon**

62.     Mr. Calderon is Hispanic.

63.     Throughout Mr. Calderon's employment, Defendant Miller made repeated comments indicating prejudice against Hispanics as well as African Americans. In conversations with Mr. Calderon, Defendant complained that Black and Hispanic people "are trying to fuck me," and told Mr. Calderon that he believed Black and Hispanic people are "lazy pigs." Defendant Miller made similar comments frequently, as often as twice a week through Mr. Calderon's employment.

64.     Defendant Miller also singled out Mr. Calderon for discriminatory treatment. On one occasion in or around October 2020, Defendant Miller and Mr. Calderon met in the basement of 830 E. 163rd Street to examine the building's clogged sewage main. Though Mr. Calderon diligently worked to clear the sewage main, Defendant Miller lambasted him with racist language, calling him a "useless spic." Defendant Miller's slur deeply offended Mr.

Calderon and made him feel that Defendant Miller disrespected Mr. Calderon's work because of his national origin.

**Defendants' Discriminatory Termination of Plaintiff**

65.     Defendant Miller made increasingly frequent threats to fire Plaintiff in December of 2020 and January 2021. Defendant would make such threats particularly when Mr. Calderon went to Defendants' office each week to pick up his paycheck. Mr. Calderon understood these threats as an effort to intimidate him into not raising the issue of his inadequate pay.

66.     On or around January 25, 2021, Mr. Calderon received a phone call from Defendant Miller. Defendant Miller stated that he was firing Mr. Calderon. Mr. Calderon asked Defendant Miller why he was being fired, as he knew that his job performance had been more than satisfactory. Defendant Miller refused to provide his reasoning for the decision, instead responding to the effect that Defendant would "come up with something" as a pretextual justification for the firing.

67.     From Defendant Miller's previous prejudicial remarks and his statement that he would invent a pretext for Mr. Calderon's termination, Mr. Calderon reasonably understood Defendants fired him because of Defendant Miller's racist belief in the supposed laziness and uselessness of Hispanic people.

68.     Defendants' conduct towards Mr. Calderon hurt him deeply. Defendant Miller's comments made Mr. Calderon feel worthless, and that Defendants did not respect him despite his hard work on their behalf. Mr. Calderon's frustration seeped into other areas of his life, making him irritable and straining relationships with friends and family. After his termination, Mr. Calderon also experienced loss of self-confidence and severe anxiety, which manifested in panic attacks, elevated heart rate, insomnia, and difficulty breathing.

**Defendants' Continued Harassment of Plaintiffs**

69.    Plaintiffs have continued to reside in 830 E. 163rd Street, apartment 1B, since Mr.

Calderon's termination by Defendants. Plaintiffs do not have a lease.

70.    On or around February 17, 2021, Defendants filed a holdover eviction petition

against Plaintiffs in the Housing Part of Bronx County Civil Court. This action is still pending as

of the time of filing.

71.    Defendants engaged in a course of illegal harassment to oust Plaintiffs from the

building.

72.    Shortly before Mr. Calderon's termination, Defendants hired a man named Monte

Shinn to work as a porter. Defendant Miller had asked Mr. Calderon to train Mr. Shinn, and Mr.

Calderon reported to Defendants that Mr. Shinn's performance was in certain regards inadequate.

On or around January 23, Mr. Shinn showed up at Plaintiffs' apartment and demanded to speak

to Mr. Calderon. When Mr. Calderon met Mr. Shinn at the door, Mr. Shinn showed Mr.

Calderon a pistol and threatened him, claiming "Seth [Defendant Miller] said you were talking

shit about me." Mr. Calderon immediately backed away and called the police, who arrested Mr.

Shinn.

73.    Though Mr. Calderon informed Defendants of Mr. Shinn's violent behavior,

Defendants continued to employ Mr. Shinn, and allowed him to continue working in 830 E. 163rd

Street. Defendants' tacit condonation of Mr. Shinn's conduct made Plaintiffs feel unsafe in their

home and fearful of further attack.

74.    On or around February 8, 2021, Defendants filed a police report falsely claiming

that Mr. Calderon had vandalized the building. Several police officers responded to the call and

spoke with Mr. Calderon, who truthfully told them no vandalism had taken place. The officers

left the building without taking any action.

75.     On or around February 22, 2021, Defendants again filed a vandalism report to the

police. The responding officers quickly ascertained the falsity of Defendants' report. In front of

Mr. Calderon, one of the officers called Defendant Miller and warned him that the police would

arrest him for filing a false police report if he continued to harass Plaintiff in this fashion.

76.     On or around March 13, 2021, Defendants shut off electricity in Plaintiffs'

apartment for approximately five days. Plaintiffs reported the outage to Defendants in hopes they

would resolve the situation, as well as to HPD and the New York City Department of Buildings

("DOB."). However, since Defendants took no action to restore power, Plaintiffs had no choice

but to power the apartment through an extension cord run into the main hallway of the building.

77.     Defendants then filed an additional police report, accusing Mr. Calderon of

stealing electricity from the building. As before, however, the responding police officers took no

action against Mr. Calderon, and instructed him to continue using the extension cord until his

power was restored. The officers further instructed Defendant Miller over the phone not to come

to Plaintiffs' apartment or continue his harassing conduct. Defendants eventually restored power

to Plaintiffs on or around March 17, 2021.

78.     This incident resulted in the New York City Department of Buildings issuing a

violation and assessing a fine against Defendants documenting the power outage and Plaintiffs'

use of an extension cord to power the apartment.

79.     Defendants also withheld other essential services to force Plaintiffs from their

home. Throughout the first months of 2021, Defendants failed to provide heat to Plaintiff's unit.

Indeed, Plaintiff did not have heat in his apartment most of the time in the months of January

through April 2021. Plaintiffs did not have heat during the four days Defendants shut off his power, making living in the unit hazardous to Plaintiffs' health due to the cold temperature.

80.    Defendants allowed other hazardous and illegal conditions to persist in Plaintiffs' unit. Starting in around July 2021, Plaintiffs' apartment had a series of leaks and floods. Wastewater leaked into Plaintiffs' bathroom, bedroom, and kitchen, and on several occasions several inches of contaminated water pooled on the apartment floor. The leaks have caused warping and cracking in the apartment walls, as well as facilitating the growth of mold colonies. Plaintiffs' clothes, among other personal possessions, were destroyed in one flooding incident. Plaintiffs reported this problem to Defendants and HPD on several occasions, but Defendants took no action to remedy the leaks or flooding.

81.    Plaintiffs' apartment also became infested with vermin. Defendants allowed uncollected trash to pile up outside the building, attracting rats. By August 2021, Plaintiffs frequently encountered large rats in their unit, presenting an additional health and safety hazard. Plaintiff reported the rat problem to Defendants, who took no corrective action.

82.    The instability caused by Defendants' harassment exacerbated the feelings of emotional distress suffered by Mr. Calderon. Ms. Rice, who has been diagnosed with a panic disorder, suffered heightened symptoms of anxiety and stress due to Defendants' conduct, including insomnia, panic attacks, and shortness of breath. The frequent disruptions to Plaintiffs' living situation made them both feel unsafe and that they could not live productive, healthy lives while Defendants continued to harass them.

## FIRST CLAIM FOR RELIEF

**Unpaid Overtime in Violation of the Fair Labor Standards Act
on behalf of Plaintiff Calderon**

83.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

84.    Upon information and belief, at all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(A)(ii). Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000 per year.

85.    Plaintiff is a covered individual within the meaning of the FLSA. 29 U.S.C. § 207(a). Until he was terminated by September 2019, Defendants employed Plaintiff within the meaning of the FLSA at all relevant times. 29 U.S.C. §203.

86.    Defendant failed to pay Plaintiff one-and-one-half times his regular wage for all hours worked over forty in one week, in violation of the FLSA. 29 U.S.C. §207(a)(1).

87.    Defendants' violation of the FLSA was willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation, when they knew or should have known such an effort was due and that their failure would financially injure Plaintiff. Plaintiff is entitled to recover from Defendants, jointly and severally, amounts to be determined at trial for his unpaid overtime, an equal amount as liquidated damages, reasonable attorney's fees and the costs of the action, pursuant to 29 U.S.C. §216(b).

## SECOND CLAIM FOR RELIEF

**Unpaid Overtime in Violation of New York Labor Law
on behalf of Plaintiff Calderon**

88.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

89.    12 N.Y.C.R.R. §142-2.2 requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one half-times the employee's regular rate."

90.    New York Labor Law §663 provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs of all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due.

91.    At all relevant times to this action, Defendants failed to pay Plaintiff one-and-one-half times his regular hourly rate for all hours worked in excess of forty per work week, in violation of the New York Labor Law and 12 N.Y.C.R.R. §142-2.2

92.    Defendants' failure to pay wages and overtime compensation to Plaintiffs for work performed after the first 40 hours worked in a week was willful.

93.    Plaintiff is entitled to recover unpaid overtime, an additional amount in liquidated damages equal to unpaid wages and overtime, costs, reasonable attorney's fees, and pre-as well as post-judgment interest. New York Labor Law §198(1-a), 663(1).

## THIRD CLAIM FOR RELIEF

**Unpaid Wages in Violation of New York Labor Law
on behalf of Plaintiff Calderon**

94.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

95.    NYLL § 193 forbids deductions from an employee's wages without their consent unless such deductions are allowed or required by law.

96.    NYLL § 191 provides that wages "shall be paid in accordance with the agreed terms of employment," between employee and employer.

97.    NYLL § 198(3). further mandates that an employee is entitled to recover the full sum of wages owed, not just the statutory minimum wage for hours worked.

98.     Defendants failed to pay Plaintiff his promised wage, in violation of New York Labor Law §§ 191 and 193.

99.    Plaintiff is entitled to recover unpaid wages, an additional amount in liquidated damages equal to his unpaid wages, costs, reasonable attorney's fees, and pre-as well as post-judgment interest. New York Labor Law §198(1-a).

## FOURTH CLAIM FOR RELIEF

**Failure to Provide Notice and Statements Required by NYLL
on behalf of Plaintiff Calderon**

100.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

101.    Defendants willfully failed to provide Plaintiff with a written notice of his wage rate and overtime eligibility, as required by NYLL § 195(1).

102.    Defendants willfully failed to provide Plaintiff with statements, with every payment of wages, that included the actual hours Plaintiff worked over forty hours and the overtime rate as required by NYLL § 195(3).

103.    Due to Defendants' violation of § 195(1) and § 195(3) and underpayment of wages, Plaintiff is entitled to recover damages of $50 for each workday in which Defendants failed to provide a wage notice, as well as $250 for each workday Defendants failed to provide an accurate wage statement, up to a maximum of $5,000 for each violation, plus costs, reasonable attorney's fees, and any other relief that the Court in its discretion deems appropriate.

## FIFTH CLAIM FOR RELIEF

### Harassment in violation of the New York City Human Rights Law
### on behalf of Plaintiff Calderon

104.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

105.    Defendants are employers within the meaning of the New York City Human Rights Law.

106.    The New York City Human Rights Law forbids discrimination in the terms, conditions, or privileges of employment on the basis of an employee's national origin. N.Y.C. Admin. § 8-107(1).

107.    Defendants treated Plaintiff less well than other employees because of his national origin, subjecting him to harassing and offensive comments about Hispanic people by Defendant Miller.

108.    Plaintiff is entitled to compensatory damages, and at the Court's discretion, reasonable attorney's fees and costs. N.Y.C. Admin § 8-502.

109.    Defendants' discriminatory conduct was willful and malicious. As such Plaintiff is entitled to punitive damages. N.Y.C. Admin § 8-502.

## SIXTH CLAIM FOR RELIEF

**Unlawful termination in violation of the New York City Human Rights Law
on behalf of Plaintiff Calderon**

110.    Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

111.    Defendants are employers within the meaning of the New York City Human Rights Law.

112.    The New York City Human Rights Law forbids discrimination in the terms, conditions, or privileges of employment on the basis of an employee's national origin. N.Y.C. Admin. § 8-107(1).

113.    Defendants discriminated against Plaintiff by terminating him because of his national origin.

114.    Plaintiff is entitled to compensatory damages, and at the Court's discretion, reasonable attorney's fees and costs. N.Y.C. Admin § 8-502.

115.    Defendants' discriminatory conduct was willful and malicious. As such Plaintiff is entitled to punitive damages. N.Y.C. Admin § 8-502.

**SEVENTH CLAIM FOR RELIEF**

**Harassment in Violation of the New York City Housing Maintenance Code
on behalf of Plaintiffs Rice and Calderon**

116.     Plaintiffs realleges and incorporates by reference all preceding paragraphs.

117.     Defendants are "owners" of 830 E. 163rd Street under N.Y.C. Admin. § 27-2004(a)(45) because Defendant 919 Prospect owns the building, and Defendants Aegis Realty and Miller are additionally in control of the premises.

118.     Plaintiffs are tenants or persons lawfully entitled to occupancy of a dwelling in 830 E. 163rd Street under the Housing Maintenance Code, N.Y.C. Admin. § 27-2005(d).

119.      Defendants engaged in illegal tenant harassment by retaining a superintendent known to have made threats against Plaintiff Calderon, calling law enforcement officers to evict Plaintiffs, shutting off Plaintiffs' electricity, and allowing other hazardous conditions to persist in Plaintiffs' apartment, as alleged above.

120.     Plaintiffs are entitled to an Order finding Defendants' conduct constitutes unlawful harassment in violation of N.Y.C. Admin. § 27-2005, imposing compensatory damages pursuant to N.Y.C. Admin. § 27-2115(o), and ordering payment of a civil penalty for each violation of the housing maintenance code pursuant to N.Y.C. Admin. §27-2115(m).

121.     Plaintiffs are additionally entitled to an Order restraining Defendants from engaging in further unlawful harassment pursuant to N.Y.C. Admin. §§ 27-2120(b) and 27—2115(m).

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

(a)    Award Plaintiffs injunctive relief to prevent further harassment by Defendants in violation of N.Y.C. Admin. § 27-2005.

(b)    Award Plaintiffs damages for unpaid overtime due under the FLSA and an additional equal amount as liquidated damages because of Defendants' willful failure to pay overtime wages for hours worked beyond forty hours in a single work week, pursuant to 29 U.S.C. § 207(a);

(c)    Award Plaintiffs damages for unpaid overtime wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 663(1);

(d)    Award Plaintiffs damages for unpaid wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 198(a-1);

(e)    Award Plaintiffs $5,000 for Defendant's failure to provide wage statements in violation of NYLL § 195(3);

(f)    Award Plaintiffs $5,000 for Defendant's failure to provide a hiring notice in violation of NYLL § 195(1).

(g)    Award Plaintiffs compensatory damages for Defendants' national origin discrimination in violation of the New York City Human Rights Law pursuant to N.Y.C. Admin. § 8-502;

(h)    Award Plaintiffs punitive damages for Defendants' willful and malicious violation of the New York City Human Rights Law pursuant to N.Y.C. Admin. § 8-502;

(i)    Award Plaintiffs compensatory damages for Defendants' violation of the Housing Maintenance Code, pursuant to N.Y.C. Admin. §27-2115(o)

(j)      Order Defendants to pay a civil penalty of between $2,000 and $10,000 for

Defendants' violation of the Housing Maintenance Code, pursuant to N.Y.C. Admin. §27-

2115(m)

(k)      Award Plaintiffs pre- and post-judgment interest;

(l)      Award Plaintiffs the costs of this action together with reasonable attorney's fees

pursuant to New York Labor Law § 663, 29 U.S.C. § 216(b), and N.Y.C. Admin. § 8-502; and

(m)     Grant such other and further relief as this Court deems necessary and proper.

Dated: Bronx, New York
        January 5, 2022

                                        Yours truly,

                                        S/ Michael Diller
                                        BRONX LEGAL SERVICES
                                        Attorneys for Plaintiff
                                        349 E.  149th St., 10th Floor
                                        The Bronx, NY 10451
                                        (347) 592-2117
                                        mdiller@lsnyc.org