<u>**VIA ECF**</u>

July 31, 2024

Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Jose Calderon et. al. v. 919 Prospect Avenue LLC et. al.*, No. 22-cv-96 (JPO)

Dear Judge Oetken:

  The Legal Aid Society, along with co-counsel Cravath, Swaine & Moore LLP, represent Plaintiffs Jose Calderon and Emily Rice in the above referenced action. We write jointly with counsel for Defendants and respectfully submit this letter motion seeking approval of the parties' settlement in the instant action as it is fair and reasonable.

## I. PROPOSED SETTLEMENT

  After extensive discovery and arm's length settlement negotiations, the parties and their counsel have determined that it is in the interest of the parties to settle all claims associated with this matter in exchange for $30,000 to be divided evenly with $15,000 allocated to Mr. Jose Calderon and $15,000 allocated to Ms. Emily Rice. The parties' agreement is attached as Exhibit 1 to this letter. Plaintiffs' counsel will forego all attorneys' fees and costs associated with the matter. The attached Settlement Agreement reflects the parties' compromise to fully and finally settle Plaintiffs' claims against Defendants.

## II. FACTUAL BACKGROUND AND PARTIES' RESPECTIVE CLAIMS AND DEFENSES

<u>Plaintiffs' Allegations</u>

  Plaintiffs claims arise out of Mr. Calderon's employment for Defendants as a building superintendent and his residence in Defendants' property. Defendants own and manage 830 E. 163rd Street, a residential apartment building in the Bronx. They employed Mr. Calderon as a building superintendent for approximately seven months from June 18, 2020, to January 25, 2021. Defendants failed to pay Mr. Calderon wages and overtime that he was owed; failed to provide him written notice of his wage rate, overtime eligibility and statement of actual hours worked as required under the New York Labor Laws; and unlawfully harassed and terminated him on the basis of his national origin. In addition, Defendants engaged in unlawful tenant harassment against both Plaintiffs and substantially interfered with their right to use and enjoy their apartment at 830 E. 163rd Street. Mr. Calderon's unpaid overtime claim is asserted under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and he maintains claims for unlawful deductions and civil penalties under the NYLL. Mr. Calderon's harassment

and wrongful termination claims are asserted under the New York City Human Rights Law ("NYCHRL"), and Plaintiffs' housing-related claims are asserted under the New York City Housing Maintenance Code and for private nuisance.

### Defendants' Position

Defendants deny any liability to Plaintiffs and dispute all claims. Defendants also assert several affirmative defenses. They argue that the Plaintiffs' claims are barred--either entirely or in part--by the relevant statutes of limitations. Additionally, Defendants argue that Plaintiff Calderon is seeking recovery for non-compensable activities, that Defendants are not joint or single "Employers" under FLSA or NYLL, and that they are entitled to an offset against potential damages. Defendants further argue that the Plaintiffs are barred by doctrines of waiver, estoppel, unclean hands and/or laches, that Plaintiffs did not take reasonable measures to mitigate damage or avoid harm and that the Plaintiffs owe monies for continuing to live unlawfully on the premises.

### Settlement Decision

While the parties continue to differ in their respective positions as to the claims alleged, all parties recognize the risks associated with this litigation and the burdens of proceeding to trial that was scheduled for July 22, 2024. During the settlement discussions, the parties evaluated the strengths and weaknesses of their respective positions and ultimately reached an agreement to settle all claims related to the matter for $30,000, to be allocated evenly between Mr. Calderon and Ms. Rice. Plaintiff's counsel, through discussions with Plaintiffs about the strengths and weaknesses of their case, their likely recovery at trial, the time-value of money, and the degree of risk associated with this litigation, determined that it was fair and reasonable for the Plaintiffs to receive $30,000 to be made in a single payment, which amounts to the total settlement. Under the terms of the settlement, Defendant will remit the settlement payment as outlined in the agreement to Plaintiff's counsel within 5 business days of execution of Approval of the Agreement by Court order.

### III. THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), settlements that dismiss FLSA claims with prejudice require approval of the Court or the Department of Labor. The Court is required to "scrutinize the settlement agreement to determine that the settlement is fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "The ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (citation and internal quotation marks omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement and approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. One Hanover, LLC*, No. 13-CV-5184 (AJP), 2014 WL 2567912, at *6 (S.D.N.Y. June 9, 2014) (citation and internal quotation marks omitted).

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky*, 900 F. Supp. 2d at 335-36. Based on these factors, the parties believe the settlement is fair and reasonable.

<u>Plaintiff's Range of Possible Recovery</u>

Based on the allegations in the Amended Complaint, Plaintiffs' counsel estimates Mr. Calderon and Ms. Rice's maximum approximate damages, including statutory and liquidated damages, as $300,000. Plaintiffs have attached a damages estimate as Exhibit 2 to this letter. Plaintiffs' counsel estimates that Mr. Calderon's maximum compensation for unpaid overtime damages under the FLSA, as $22,145.75, plus the same amount in liquidated damages. The $15,000 Mr. Calderon will receive under the settlement thus amounts to approximately 30% of his maximum damages under the FLSA, a reasonable compromise. *See, e.g., Gervacio v. ARJ Laundry Svcs.*, No. 17cv-9632, 2019 WL 330631 at *2 (S.D.N.Y. Jan. 25, 2019) (approving settlement for 20% of maximum damages). The overall settlement sum of $30,000 additionally constitutes a reasonable compromise of all Plaintiffs' claims.[1] *See, e.g., Andreyuk v. ASF Construction & Excavation Corp.*, No. 19-cv-7476, 2023 WL 3993933 at *2-3 (S.D.N.Y. June 14, 2023) (approving settlement for 9% of one plaintiff's maximum recovery); *Zorn-Hill v. A2B Taxi LLC*, No. 18-cv-11165, 2020 WL 5578357 at *4 (S.D.N.Y. Sept. 17, 2020) (approving settlement for "slightly over 10%" of maximum damages).

<u>Efficiency and Litigation Risks</u>

The parties' settlement allows Plaintiffs to avoid serious litigation risks, the burdens of trial, and the delay associated with further litigation and potential appeals. Plaintiffs' counsel has weighed the strengths and weaknesses of their case in view of Defendants' contentions, deposition testimony of the parties and non-party witnesses, and documents produced by Defendants. Although Mr. Calderon and Ms. Rice disagree with the Defendants' assertions, a jury may not. Plaintiffs' counsel recognizes the risk that Plaintiffs proceed to trial and ultimately receive no damages, or damages much lower than their maximum recovery.

Mr. Calderon's recovery under the FLSA and NYLL is uncertain given the evidentiary record. There are not complete records of overtime worked by Mr. Calderon. Plaintiffs would prove Mr. Calderon's damages through their recollection of how his work hours. A jury may not

---

[1] The parties maintain that settlement of Plaintiffs' state law claims is not subject to Court approval under *Cheeks*. *See e.g., Martinez v. 189 Chrystie St. Partners, LP*, 22-cv-3111, 2024 WL 1853179 at *1, n.1 (S.D.N.Y. April 29, 2024) (*citing Pavone v. Diesel U.S.A.*, Inc., No. 21-CV-5219, 2022 WL 1177344, at *2 (S.D.N.Y. Mar. 2, 2022). However, the potential recovery under Plaintiffs' state law claims is relevant to the reasonableness of the settlement of Mr. Calderon's FLSA claims. *See Fisher v. SD Protection Inc.*, 9848 F.3d 593 n. 12 (2d. Cir. 2020) (noting varying approaches to review of state law claims asserted in FLSA disputes).

find their recollection accurate or credible, thus reducing the sum of damages Mr. Calderon would receive on his wage claims.

Mr. Calderon also faces substantial risk in establishing Defendants' liability for wrongful termination under the NYCHRL. Defendants maintain that they fired Mr. Calderon because of his job performance and produced communications showing contemporaneous dissatisfaction with Mr. Calderon's services. Plaintiffs maintain that Defendants' proffered justification for firing Mr. Calderon was pretextual but recognize that a jury may credit Defendants' account of events.

Even if Plaintiffs establish Defendants' liability for their employment discrimination, tenant harassment, and nuisance claims, they may recover significantly less than their maximum damages. Approximately half of Plaintiffs' total damages, or $150,000, are for emotional distress. If they were to proceed to trial, Plaintiffs would be relying on garden variety emotional distress damages, which can vary drastically based on the context of the case. Similarly, Mr. Calderon may recover less than the projected $95,000 in lost wages if Defendants prove he failed to mitigate his damages for some or all the time of his unemployment. Defendants have additionally asserted their entitlement to an offset for unpaid rent or use and occupancy by Plaintiffs, which could further reduce their recovery.

Prompt settlement at is of significant value to Plaintiffs. Plaintiffs were evicted by Defendants in the Fall of 2023 and are still working to stabilize their housing situation. Even if Plaintiffs prevail at trial, post-trial litigation and appeals may continue for months or years to come before they see any recovery. The Settlement Agreement allows Plaintiffs to recover a reasonable sum while avoiding the risks, delay, and burden of proceeding to trial and further litigation.

<u>Arm's-Length Negotiating and Risk of Possible Fraud or Collusion</u>

The proposed agreement is the product of arm's-length negotiations without fraud or collusion. Both parties are represented by competent counsel. The parties reached the proposed agreement after substantial adversarial litigation, including both motion practice and discovery.

<u>Attorneys' Costs and Fee Waiver</u>

Plaintiff's attorneys, Cravath, Swaine & Moore LLP and The Legal Aid Society, are waiving all attorneys' fees and costs they would otherwise be entitled to.

Plaintiffs are represented by experienced counsel. Elizabeth Saylor has been a civil rights attorney for 23 years as both a partner in private practice as well as the Citywide Director of The Legal Aid Society's Employment Law Unit. Michael Diller has been a Staff Attorney for three years at both the Bronx Legal Services and The Legal Aid Society. Sharonmoyee Goswami is a Partner in the New York office of the law firm Cravath, Swaine & Moore LLP and has practiced law for 12 years. Donald R. Bunton has practiced law for nine years.

Scope of Release

The proposed agreement contains a reasonably tailored release to guarantee the parties litigation peace. Courts in this district scrutinize general release provisions in FLSA settlements to "police unequal bargaining power between employees and employers." *Heiloo v. Fruitco Corp.*, No. 18-cv-1917(JPO), 2019 WL 5485205 at *2 (S.D.N.Y. Oct. 25, 2019) (citation omitted) (Oetken, J.). Some courts have nevertheless approved true mutual general releases, particularly where the plaintiff no longer works for the defendant. *See Souza v. 65 St. Marks Bistro*, 15-Civ. 327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (finding that general mutual releases in cases "with former employees . . . make[] sense in order to bring complete closure" and ensure that "both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes"); *Strauss v. Little Fish Corporation*, No. 19-CV-10158 (LJL), 2020 WL 4041511, at *5, 6 (S.D.N.Y. July 17, 2020) (same).[2]

The Court should approve the proposed release given that Mr. Calderon's employment with the Defendants has ended and he and Ms. Rice no longer reside on Defendants' property. In these circumstances, Plaintiffs may make an informed judgment to release all claims related to Mr. Calderon's employment and Plaintiffs' residence on Defendants' property. The proposed release is not a blanket general release because Plaintiffs do not waive claims unrelated to their employment and residence relationships with Defendants. Plaintiffs in-fact asserted, and vigorously litigated, their state law claims for employment discrimination, tenant harassment, and nuisance, which they are willing to release in exchange for Defendants promises under the Settlement Agreement. *See Souza*, 2015 WL 7271747 at *7 (approving broad release of claims where plaintiff is represented by competent counsel to advise on non-FLSA claims). Defendants release of claims has value for Plaintiffs, as Defendants release all claims for unpaid rent or use and occupancy for the duration of Plaintiffs' two-year residence on their property after Mr. Calderon's termination. The proposed release is the reasonable result of arms-length negotiation, supported by actual consideration, and should be approved by the Court.

## IV. CONCLUSION

The parties respectfully request that the Court approve the Settlement Agreement in this matter as it contains fair, adequate, and reasonable terms.

---

[2] The settlement agreement does not contain impermissible provisions such as a non-disparagement clause, nor does it impose a duty of confidentiality.

Respectfully submitted,

*/s/Donald R. Bunton*

Donald R. Bunton
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1804
dbunton@cravath.com


*/s/ Michael Diller*

Michael Diller
Staff Attorney
Employment Law Unit
49 Thomas Street, 5th Floor
New York, NY 10013
(917) 581-2793
mdiller@legal-aid.org

*Attorneys for Plaintiffs Jose Calderon and Emily Rice*